Veronika Fabian, State Bar 018770
Hyung S. Choi, State Bar 015669
CHOI & FABIAN, PLC
1423 S. Higley Rd., Suite 110
Mesa, AZ 85206
Tel:  (480) 517-1400
Fax:  (480) 517-6955
hyung@choiandfabian.com
veronika@choiandfabian.com

Attorneys for Plaintiff Tillman

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Ushondra Tillman, on behalf of herself and those similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>Cavalry Portfolio Services, LLC, Cavalry SPV I, LLC,<br><br>Defendants. | CV-08-8142-PCT-DGC<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

**INTRODUCTION**

1.  Plaintiff Ushondra Tillman, on behalf of herself and all others similarly situated, alleges Defendants Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC violated 15 U.S.C. §1692g(a)(3) (part of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA")) by misrepresenting to the

1. consumer that, in order to dispute the debt, the dispute must be "in writing." *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005).

2. Defendants also continued to collect the debt after Tillman had disputed it and before providing Tillman with verification of the debt in violation of 15 U.S.C. § 1692g(b).

3. Defendants reported the alleged debt on Tillman's credit report without noting that it was in dispute in violation of 15 U.S.C. 1692e(8).

4. Plaintiff brings this action to remedy Defendants' violations of the FDCPA on an individual and class basis.

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337 and 15 U.S.C. §1692k.

6. Venue in this District is proper because Plaintiff resides here and Defendants do business in this District.

## PARTIES

7. Plaintiff Ushondra Tillman ("Tillman" or "Plaintiff") resides in Flagstaff, Coconino County, Arizona.

8. Tillman is a natural person, allegedly obligated to pay a debt, and is thus a "consumer" under the FDCPA. 15 U.S.C. § 1692a(3).

9. Defendant Cavalry Portfolio Services, LLC ("CPS") is a Delaware limited liability company licensed to do business in Arizona.

10. CPS regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

11. CPS regularly collects or attempts to collect debts for other parties. It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

12. Defendant Cavalry SPV I, LLC, ("Cavalry") is a Delaware limited liability company with its principal place of business in Hawthorne, New York.

13. Cavalry regularly uses the mails and telephone in a business the principal purpose of which is the collection of debts.

14. Cavalry regularly collects or attempts to collect debts for other parties. It is a "debt collector" as defined in the FDCPA. 15 U.S.C. § 1692a(6).

## FACTUAL ALLEGATIONS

15. On June 29, 2001, Tillman purchased a new 2001 Mazda Protege ("the vehicle") from Mazda of Clear Lake in Webster, Texas.

16. Tillman purchased the vehicle pursuant to a Retail Installment Sale Contract - Simple Finance Charge ("the RISC"). (A copy of the RISC is attached as Exhibit A).

17. Tillman purchased the vehicle for personal, family, or household purposes.

18. The RISC was subsequently assigned to Ford Motor Credit d/b/a Mazda America Credit ("Mazda Credit").

19. Tillman made payments for approximately a year and a half under the RISC.

20. Tillman then encountered financial difficulties and defaulted under the RISC.

21. On April 22, 2003, Mazda Credit accelerated Tillman's loan and declared the entire amount due.

22. After that date, Tillman made no payments under the RISC and the loan was in default.

23. On July 2, 2007, Mazda Credit sued Tillman for the entire balance due under the RISC.

24. Tillman answered, asserting that Mazda Credit's claim was barred by the statute of limitations.

25. Tillman and Mazda Credit subsequently settled the case.

26. Pursuant to that settlement, Mazda Credit agreed to dismiss its claims against Tillman, pay her attorney's fees, and sign a mutual release agreement. (A copy of the Settlement Agreement and Release is attached as Exhibit B).

27. The mutual release provided as follows:

> The Parties, on behalf of themselves, their agents, employees, partners, representatives, principals, executors, administrators, and assigns do hereby completely release and forever discharge the other and their agents, attorneys, current and former employees, officers, directors,

4

shareholders, partners, representatives, principals, affiliates, predecessors, successors, executors, administrators and assigns from any and all claims, actions, suits, debts, liens, liabilities, demands, rights, damages, losses, costs, fees, expenses and otherwise, whether known or unknown, whether mature or to mature in the future, that have been or that could have been made within or in connection with the matter.

28. Sometime after the settlement and full release agreement were entered into, Cavalry acquired the alleged debt arising out of the Mazda loan.

29. Cavalry assigned the alleged debt to CPS for servicing.

30. As a standard practice and procedure, Cavalry assigns all of its alleged debts to CPS for servicing.

31. At all relevant times, CPS acted as an agent for, and within the scope of its actual or apparent authority for, Cavalry.

32. On June 10, 2008, CPS sent Tillman a letter attempting to collect the debt which had been released by Mazda Credit. (A copy of that letter is attached as Exhibit C).

33. CPS, in Exhibit C, stated:

> Unless you notify Cavalry **in writing** within (30) days after receiving this letter that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.

(*Emphasis added*).

5

34. Upon information and belief, the letter CPS sent to Tillman is a standardized form letter that CPS regularly sends to consumers.

35. Under the FDCPA at 15 U.S.C. §1692g(a)(3), a consumer's dispute need not be in writing.

36. CPS's letter misrepresents to the consumer that the dispute must be in writing.

37. The Arizona Administrative Code prohibits a collection agency from misrepresenting the state of the law to the debtor.  A.A.C. R20-4-1508.

38. Consumers are less likely to dispute a debt if a dispute must be in writing as opposed to simply an oral dispute.

39. Upon information and belief, CPS imposes this additional requirement in order to limit the number of disputes it receives from consumers.

40. On June 25, 2008, Tillman responded by sending CPS a letter stating as follows:

> I Ushondra Tillman...am writing to let you know this Debt has been taken to legal counsel and agreement was reached between myself and Ford Motor Credit Aka Mazda American Credit to have this Item Dismissed.  So please be advised that I am Disputing this Debt.

(A copy of that letter is attached as Exhibit D).

41. Tillman included a copy of the release agreement and stipulation for dismissal with that letter.

42. CPS never sent Tillman a verification of the debt.

6

43. Instead, CPS continued its collection activities.

44. Unbeknownst to Tillman, CPS had begun reporting the account as a collections account to the three main credit reporting agencies in April of 2008.

45. After receiving Tillman's dispute letter, CPS again reported the alleged debt to TransUnion as a collection account, past due in the amount of $21,225.00, without noting the dispute, on July 20, 2008.

46. CPS also reported the debt to Experian, as a collection account, past due in the amount of $21,225.00 in July of 2008.

47. On August 11, 2008, CPS sent another collection letter to Tillman, attempting to collect the alleged debt, which had been released by Mazda Credit. (A copy of that letter is attached as Exhibit E).

48. To date, CPS has never sent a verification of the debt to Tillman.

49. Tillman learned that the debt was being reported on her credit reports despite her dispute when she was denied credit on several occasions.

50. Tillman then obtained counsel to try to resolve the matter through Mazda Credit.

51. As a result of her counsel's efforts, Mazda Credit repurchased the loan from Cavalry on August 18, 2008 and instructed Defendants to delete the trade line regarding the account as of that date.

7

52. CPS apparently has a pattern and practice of continuing to collect on debts after a consumer has disputed them and without investigating them or providing verification of those debts.

53. The Arizona Administrative Code prohibits a debt collector from continuing collection efforts against a consumer without investigating any reasonable claim that the debt is not owed.  A.A.C.R 20-4-1521.

54. In December of 2008, the Arizona Department of Financial Institutions entered an order assessing a fine of $15,000.00 against CPS for continuing to collect on disputed debts without first investigating a consumer's dispute.

55. Cavalry is responsible for violations of the FDCPA by its' debt collector CPS.

## CLASS ACTION ALLEGATIONS

56. This action is brought on behalf of a class defined as (i) all Arizona residents to whom CPS caused to be sent (ii) an initial letter in the form of Exhibit C (iii) in an attempt to collect a debt incurred for personal, family, or household purposes and (iv) during the one year period prior to the filing of the complaint in this matter through the date of class certification.

57. Plaintiff alleges on information and belief based on the use of uniform collection letters in the form of Exhibit C that the class is so numerous that joinder of all members is impractical.

58. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members. The principal issues are:

   a. Whether CPS and Cavalry are debt collectors;

   b. Whether CPS's letters in the form of Exhibit C violate the FDCPA, and

   c. Whether Cavalry is liable for violations of the FDCPA by CPS.

59. Tillman's claim with respect to the language contained in Exhibit C are typical of those of the class members. All are based on the same facts and legal theories.

60. Tillman will fairly and adequately protect the interests of the class. She has retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions. Neither Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this action.

61. Certification of this class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

62. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

9

    a.    The questions of law or fact common to the members of the class predominate over any questions affecting an individual member and

    b    A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

63.    Plaintiff requests certification of a hybrid class combining Rule 23(b)(2) for equitable relief with Rule 23(b)(3) for monetary damages.

## CAUSE OF ACTION I:  CLASS CLAIMS

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

64.    In Exhibit C, CPS required Tillman and members of the proposed class that in order to dispute the debt she must do so "in writing" in violation of 15 U.S.C. §1692g(a)(3). *Camacho v. Bridgeport Financial, Inc.*, 430 F.3d 1078 (9th Cir. 2005).

## CAUSE OF ACTION II: INDIVIDUAL CLAIMS

## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

65.    CPS violated the FDCPA by engaging in the following actions:

    a.    The use of false, deceptive, or misleading representations or means in connection with the collection of a debt; 15 U.S.C. § 1692e;

    b.    Misrepresenting the character, amount, or legal status of the debt; 15 U.S.C. §1692e(2)(A);

    c.    Communicating or threatening to communicate to any person information which is known or which should be known to be false,

10

including the failure to communicate that a disputed debt is disputed. 15 U.S.C. §1692e(8);

    d. Continuing to attempt to collect the debt after Tillman had disputed it and before providing Tillman with verification of the debt. 15 U.S.C. § 1692g(b).

66. As a result of CPS's violations of the FDCPA, Tillman suffered actual and statutory damages in an amount to be determined by this Court.

## JURY DEMAND

67. Tillman demands a jury on all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Ushondra Tillman requests that this Court award her against Cavalry Portfolio Services, LLC and Cavalry SPV I, LLC

    a. On the class claims:

        i. Certification of this matter to proceed as a class action;

        ii. Declaratory relief that CPS's letters in the form of Exhibit C violate the FDCPA;

        iii. Statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(B) ;

        iv. Attorney's fees, litigation expenses and costs of suit pursuant to 15 U.S.C.§1692k(a)(3); and,

        v. Such other relief as it deems just.

11

    b.    On her individual claims:

        i.    Her actual damages;

        ii.    Statutory damages in the amount of $1,000 pursuant to 15 U.S.C. §1692k(a)(2);

        iii.    Attorney's fees and costs in bringing this action pursuant to 15 U.S.C. §1692k(a)(3);

        iv.    Prejudgment and post-judgment interest; and,

        v.    Such other relief as it deems just.

RESPECTFULLY SUBMITTED on March 11, 2009.

CHOI & FABIAN, PLC

<u>   Veronika Fabian /s/   </u>
Attorneys for Plaintiff Tillman

**CERTIFICATE OF SERVICE**

I hereby certify that the content of the document is acceptable to all persons required to sign the document and that on March 11, 2009, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

    Pat Esquivel
    JEROLD KAPLAN LAW OFFICE, P.C.
    2738 E. Washington Street
    Phoenix, AZ 85034

CHOI & FABIAN, PLC

<u>   Dinah Lee /s/   </u>
Paralegal